IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 06-CR-00377-LTB-1

UNITED STATES OF AMERICA,

    Plaintiff,

v.

CUONG QUOC TRANG,

    Defendant.

---

## PLEA AGREEMENT AND STATEMENT OF FACTS RELEVANT TO SENTENCING

---

The United States of America (the government), by and through Suneeta Hazra, Assistant United States Attorney for the District of Colorado, and the defendant, Cuong Quoc Trang, personally and by counsel, David A. Ogilvie and Joseph Saint-Veltri, submit the following Plea Agreement and Statement of Facts Relevant to Sentencing pursuant to D.C.COLO.LCrR 11.1.

### I. PLEA AGREEMENT

The defendant agrees to plead guilty to Count One of the Indictment charging a violation of 18 U.S.C. § 371, conspiracy to commit criminal copyright infringement.

Both parties reserve the right to make any recommendation regarding any other matters not specifically addressed by this agreement, including the length of any term of imprisonment and fine to be imposed.



Court Exhibit 2

The government further agrees to file a motion for an additional one-point reduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(b).

After sentence is imposed, the government agrees to move to dismiss the remaining counts of the indictment.

## II. STATUTORY PENALTIES

The maximum statutory penalty for a violation of 18 U.S.C. § 371 is: not more than 60 months imprisonment; not more than $250,000 fine, or both; not more than 3 years supervised release; and a $100 special assessment fee.

The conviction may cause the loss of civil rights, including but not limited to the rights to possess firearms, vote, hold elected office, and sit on a jury. Because the defendant is an alien, the conviction may cause the defendant to be deported or confined indefinitely if there is no country to which the defendant may be deported.

A violation of the conditions of probation or supervised release may result in a separate prison sentence.

## III. ELEMENTS OF THE OFFENSE

The essential elements of the crime of conspiracy to commit criminal copyright infringement, in violation of 18 U.S.C. § 371 are:

(1) that the conspiracy to willfully reproduce and distribute copyrighted material, as charged in the indictment, existed;

(2) that the defendant knowingly became a member of the conspiracy with an intention to further the conspiracy; and

(3) that an overt act was committed by at least one conspirator in furtherance of the conspiracy.

## IV. STIPULATION OF FACTUAL BASIS AND FACTS RELEVANT TO SENTENCING

The parties agree that there is no dispute as to the material elements which establish a factual basis of the offense of conviction.

Pertinent facts are set out below in order to provide a factual basis for the plea and to provide facts which the parties believe are relevant for computing the appropriate guideline range. To the extent the parties disagree about the facts relevant to sentencing, the statement of facts identifies which facts are known to be in dispute at the time of the plea.

The statement of facts herein does not preclude either party from presenting and arguing, for sentencing purposes, additional facts or factors not included herein which are relevant to the advisory guideline computation or to sentencing in general. In deciding the factual basis for the sentence, the Court can consider the stipulation of the parties, the results of the presentence investigation, and any other relevant information.

The parties agree that the government's evidence would be:

> The government would elicit testimony from individuals familiar with the "warez scene," an online subculture or community in which organized groups and individuals engage in the illegal reproduction and distribution of copyrighted works over the Internet. The term "warez" refers to infringing digital copies of software, movies, music and games. "Legends Never Die" (LND) was one of many organized "warez groups." LND released infringing material onto the internet after its members removed any security or copy protection controls, a process known as "cracking." Rebels specialized in the illegal release of computer-aided design (CAD), manufacturing (CAM), and engineering (CAE) software. Its members released hundreds of cracked copyrighted materials onto the Internet.
>
> FBI Special Agent Darren Mott would testify that beginning in November of 2002, the FBI in Charlotte, North Carolina, began to operate an

undercover computer known as an FTP server. FTP stands for "file transfer protocol." An FTP server is a computer connected to the internet which allows authorized users to transfer files into and out of the computer. The undercover server was an "archive" server, meaning that warez groups used it to store massive quantities of pirated material released by multiple groups over a period of time, for downloading by those with authorized access. Typically, in order to gain access to a warez FTP server, a warez scene member had to be trusted by someone with authority to add users to the site. The FBI utilized a cooperating witness to infiltrate the warez scene.

The undercover FTP server kept track of each user's file transfers. For each transfer, it logged the user name (a nickname typically) and also the Internet Protocol (IP) address of the user. At any given moment, the IP address is a unique identifier which can be used to trace the transfer back to its source. In this way, the authorized users could be located even though their true identities were not known. A user named "cadman" was permitted access to the undercover server by "darkwolf," the leader of LND. The user logging on with the user name "cadman" was traced back to the residence of the defendant in Parker, Colorado.

Between January 4, 2002, and April 21, 2004, the defendant transferred in excess of 150 copyrighted titles into or out of the server, of which more than 10 were uploads or inbound transfers. In some instances, the defendant uploaded software titles to the "supply" directory of LND's private FTP site. The government did not value all of the titles transferred by the defendant. The transferred titles that were valued totaled more than $30,000, but less than $70,000.

On April 21, 2004, the FBI undertook a coordinated international enforcement operation. Combining the results of four domestic undercover investigations into the warez scene, the FBI conducted simultaneous searches at approximately 80 locations in the United States, including the defendant's residence, where agents seized computers, computer equipment, computer storage media, software, printers and monitors. The FBI also shared evidence with its counterparts in 10 other countries, resulting in an additional 40 searches on the same day.

The defendant was interviewed during the search of his home. He admitted going by the nickname "cadman." He admitted to downloading software, movies and music from FTP sites. He also admitted to supplying software to the group LND.

## IV. SENTENCING COMPUTATION

The parties stipulate that sentencing in this case will be determined by application of the factors listed in 18 U.S.C. § 3553(a), including the advice provided to the Court by the United States Sentencing guidelines. The guidelines are advisory only and one of the factors that the Court must consider in imposing sentence.

Any estimation by the parties regarding the estimated advisory guideline application does not preclude either party from asking the Court to depart from the otherwise appropriate advisory guideline range at sentencing, if that party believes that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the sentencing guidelines.

The parties understand that the Court may impose any sentence, up to the statutory maximum, regardless of any guideline range computed, and that the Court is not bound by any position of the parties. The Court is free to reach its own findings of facts and sentencing factors considering the parties' stipulations, the presentence investigation, and any other relevant information.

To the extent the parties disagree about the sentencing factors, the computations below identify the factors which are in dispute.

The 2004 Edition of the Sentencing Guidelines is applicable to this case.

A. The base guideline is § 2B5.3, with a base offense level of 8.

    B. Specific Offense Characteristics:

        The offense involved the uploading of infringing items [USSG § 2B5.3(b)(2)]:     2

        The infringement amount, as this phrase is defined in USSG § 2B5.3, was in excess of $30,000 but less than $70,000 [USSG §§ 2B5.3(b)(1), 2B1.1(b)(1)]:     6

C.     There are no victim-related, role-in-offense, obstruction and/or multiple count adjustments which apply.

D.     The adjusted offense level would therefore be 16.

E.     The defendant should receive the adjustments for acceptance of responsibility. The resulting offense level would therefore be 13.

F.     The parties understand that the defendant's criminal history computation is tentative. The criminal history category is determined by the Court. The defendant has no known criminal history. Based on that information, if no other information were discovered, the defendant's criminal history category would be I.

G.     Assuming the (tentative) criminal history facts of (F) above, the career offender/criminal livelihood/armed career criminal adjustments would not apply.

H.     The guideline range resulting from the estimated offense level(s) of (E) above, and the (tentative) criminal history category of (F) above, is 12 to 18 months. However, in order to be as accurate as possible, with the criminal history category undetermined at this

time, the estimated offense level(s) of (E) above could conceivably result in a range from 12 months (bottom of Category I), to 41 months (top of Category VI). The sentence would be limited, in any case, by the statutory maximum.

    I.    Pursuant to guideline §5E1.2, assuming the estimated offense level of (E) above, the fine range for this offense would be $ 3,000 to $30,000, plus applicable interest and penalties.

    J.    Pursuant to guideline §5D1.2, if the Court imposes the term of supervised release, that term shall be at least 2 years, but not more than 3 years.

    K.    The government will not recommend restitution in this case for reasons set forth in 18 U.S.C. §§ 3663(a)(1)(B)(ii) and 3663A(1)(c)(3)(B), although the defendant understands that victims of the offense will receive notification of the case and may appear and request that the court order restitution.

## X. WHY THE PROPOSED PLEA DISPOSITION IS APPROPRIATE

The parties believe the sentencing range resulting from the proposed plea agreement is appropriate because all relevant conduct is disclosed, the sentencing guidelines take into account all pertinent sentencing factors with respect to this defendant, and the charges to which the defendant has agreed to plead guilty adequately reflect the seriousness of the actual offense behavior.

This document states the parties' entire agreement. There are no other promises, agreements (or "side agreements"), terms, conditions, understandings or assurances, express

or implied. In entering this agreement, neither the government nor the defendant have relied, or are relying, on any terms, promises, conditions or assurances not expressly stated in this agreement.

Date: 11/15/06

_____
Cuong Quoc Trang
Defendant

Date: 11/19/06

_____
David A. Ogilvie or Joseph Saint-Veltri
Attorney for Defendant

Date: 11/21/06

_____
Suneeta Hazra
Assistant U.S. Attorney